IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NOLAN KINARD FLOYD, SR., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-22-1058 |
| JEANETTE CLARK, | * | |
| Defendant. | * | |
| | *** | |

**MEMORANDUM OPINION**

Nolan Kinard Floyd, Sr., an inmate at North Branch Correctional Institution ("NBCI"), has filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendant nurse Jeanette Clark was deliberately indifferent to his medical needs in violation of the Eighth Amendment to the United States Constitution. ECF No. 4. Clark has moved to dismiss the claim or alternatively for summary judgment in her favor. ECF No. 12. The Court notified Floyd that, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), his failure to respond to the motion could result in adverse action such as dismissal of the Complaint or summary judgment in the Defendant's favor. ECF No. 13. Floyd never responded to the motion. After thorough review, the Court resolves the motion without a hearing. Local Rule 105.6 (D. Md. 2021). Summary judgment will be granted in Clark's favor.

I.   **Background**

The Court construes the record evidence most favorably to Floyd. On September 18, 2020, Floyd first reported his hernia to a nurse at the Maryland Reception, Diagnostic and Classification Center. ECF No. 12-3 at 132. Examination revealed "a firm knot" in Floyd's left groin; he denied

any pain at the time and was educated on how to treat his hernia going forward. *Id.* Floyd also saw Dr. Mulugeta Akal that same day, who noted that the hernia was reducible.[1] The doctor instructed Floyd on how to reduce the hernia and to return if it became irreducible. *Id.* at 133.

On July 15, 2021, Floyd was transported to Western Correctional Institution ("WCI"). ECF No. 4 at 1. Shortly after his arrival, nurse Clark evaluated Floyd. Floyd told Clark about his hernia and that occasionally he experienced acute pain. *Id.* Three days later, Floyd saw Clark again for a chronic care visit related to his hypertension. ECF No. 12-3 at 225. Clark advised Floyd that WCI did not have a provider available at that time to evaluate his hernia. ECF No. 4 at 2. Clark specifies that she could not visually examine Floyd because no medical chaperone was present in the housing unit. ECF No. 12-2 at ¶ 17; ECF No. 12-3 at 225. Still, Clark prescribed Extra Strength Tylenol to treat Floyd's pain and discomfort. ECF No. 12-3 at 227.

Between July 2021 and January 2022, Floyd complained about his hernia pain through sick call slips. ECF No. 4 at 2. Floyd describes that his sick call slips were "ignored," but the medical record reflects that Floyd missed three sick call appointments, one expressly set to address his hernia pain. ECF No. 12-3 at 212, 219, 221. On December 4, 2021, Floyd saw nurse Amy Booth, who referred him for a surgical consult. *Id.* at 210.

On January 15, 2022, Clark saw Floyd again, and Floyd reported a chronic dull pain that extended down into his left scrotum. ECF No. 12-3 at 207. The hernia was reducible but came out again with any small movement, and a hernia belt was no longer holding it in place. *Id.* Clark advised Floyd that a hernia is usually not life threatening and that surgical repair is considered an elective procedure. *Id.* Clark again prescribed Tylenol for his hernia pain and ordered a scrotal

---

[1] Reducible hernias are not life threatening, but if the bowel "pushes through the hernia and becomes trapped in the sac of the hernia (the bulge of soft tissue that pushes through a weak spot in the abdominal wall)," this can result in serious complications including bowel obstruction or strangulation if blood is cut off from the small intestine which can lead to intestinal perforation, shock, or gangrene and tissue death. ECF No. 12-2 at ¶ 13.

support and x-rays.  *Id.* at 208.  ECF No. 4 at 3.  Clark also submitted a consult request for general surgery.  ECF No. 12-3 at 204-05.  Although the medical record reflects that Floyd had been given Tylenol, he avers that the pills he actually had received were for a "skin discoloration that appeared after receiving a bad Covid-19 vaccine shot."  *Compare* ECF No. 4 *with* ECF No. 12-2 at ¶ 21.

On January 18, 2022, the surgical consult was approved for Floyd, ECF No. 12-3 at 282, but he refused to go to the initial appointment.  *Id.*  Although the appointment was rescheduled, by that time Floyd had been transferred to NBCI.  *Id.* at 199.  His next opportunity for the consult did not take place until April 1, 2022.  *Id.* at 282.  Floyd was transferred again to Baltimore Central Booking & Intake Center on April 6, 2022.  *Id.* at 194.  During a health assessment there, Floyd reported periodic soreness but that his pain was controlled with Tylenol and that the hernia was still reducible.  *Id.* at 190.

Floyd filed this action on April 29, 2022.  Shortly after, he was released from custody, so the previously scheduled surgical appointment was canceled.  *Id.* at 283.  ECF No. 12-2 at ¶ 25.  Evidently, Floyd returned to custody on July 18, 2022, and was transferred to NBCI.  ECF No. 12-3 at 173, 177.  Floyd refused a chronic care visit on August 3, 2022, for his hernia and general pain management.  *Id.* at 166.

## II.  Standard of Review

Clark moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in her favor under Rule 56.  Such motions implicate the Court's discretion under Rule 12(d).  *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).  Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule

56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Clark's motion placed Floyd on notice that the Court may treat it as one for summary judgment. Because Floyd knew of his right to respond but opted otherwise, the Court sees no impediment to reaching summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to … the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

4

**III.     Analysis**

Clark's alleged denial of adequate medical care for Floyd implicates his Eighth Amendment right to be free from "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To succeed in the claim, Floyd must demonstrate that Clark's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting"). A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto v. Stansberry*, 841 F.3d at 219, 225 (4th Cir. 2016).

Deliberate indifference specifically requires the plaintiff to show that objectively, they were suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal quotation marks and ellipses omitted).

Proof of an objectively serious medical condition, however, does not end the inquiry. The plaintiff must also demonstrate that defendant's exhibited "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk known to the defendant at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000); *see also Jackson*, 775 F.3d at 179. Adequacy of treatment in this context "is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). Relevant here, this Court has consistently held that deferral of surgery in favor of conservative treatment alone does not amount to deliberate indifference. *See Dyson v. Wexford Health Sources, Inc.*, No. TDC-19-0307, 2020 WL 1158791, at *7 (Mar. 10, 2020), *aff'd*, 2021 WL 5357490 (4th Cir. 2021); *Rivera v. Wexford Health Sources, Inc.*, No. DKC-17-666, 2018 WL 2431897, at * 4 (May 30, 2018); *Dent v. Wexford Health Sources, Inc.*, No. CCB-15-206, 2017 WL 930126, at *8 (D. Md. 2017), *aff'd sub nom, Dent v. Ottey*, 698 F. App'x 99 (Mem) (4th Cir. 2017); *Jennings v. Ottey*, No. WMN-14-1736, 2015 WL 4496431, at *5 (July 22, 2015), appeal dismissed, No. 15-7194 (4th Cir.). However, delay of treatment in the face of significant pain is the kind of harm sufficient to support a finding of deliberate indifference. *Sharpe v. S.C. Dep't of*

*Corr.*, 621 F. App'x 732, 733-34 (Mem) (4th Cir. 2015); *see Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (collecting cases).

The parties dispute whether Floyd's hernia was a serious medical need.  Floyd contends that his diagnosis is self-evidently serious, but the record reflects not so serious that surgery was imminent or even necessary.  ECF No. 12-3 at 145, 251.  Nonetheless, staff saw fit to refer Floyd for a surgical consult.  *See id.* at 146, 148, 151.  Accordingly, sufficient evidence exists from which a reasonable juror could conclude that the hernia constitutes a serious medical need.

In any event, the claim will not proceed because no evidence supports that Clark had been deliberately indifferent to that need.  At the first visit with Floyd, Clark learned that the hernia was reducible and proscribed him Tylenol for pain relief.  Next, when Floyd reported pain extending to his scrotum, Clark submitted a surgical consult on his behalf, ordered x-rays and a scrotal support, and renewed Floyd's Tylenol prescription.  By contrast, no evidence suggests that Clark failed to respond to Floyd's complaints.  And any delay in treatment had not been Clark's doing, but rather was the product of missed appointments, transfers and Floyd's ultimate release.  Nor can Clark be faulted if Floyd received the wrong medication on one occasion.  Nothing in the record reflects that Clark made such an error, and nothing reflects that it had been a product of any "deliberate indifference" on Clark's end.  Thus, when viewing the record most favorably to Floyd, no reasonable factfinder could conclude Clark violated Floyd's Eighth Amendment rights.  The Court grants summary judgment in Clark's favor.

## IV.     Conclusion

For the foregoing reasons, Clark's Motion to Dismiss or Alternatively for Summary Judgment, construed as a motion for summary judgment, is granted. A separate Order follows.

| | |
|---|---|
| 7/17/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |